## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**DONALD K. ANDRE, JR.,**               )
                                        )
           **Plaintiff,**               )        **Civil No.**
                                        )        **11-40009-FDS**
           **v.**                       )
                                        )
**JUDGE MORIARTY, et al.,**             )
                                        )
           **Defendants.**              )
_____)

## MEMORANDUM AND ORDER

**SAYLOR, J.**

### I.    Introduction

On January 11, 2011, plaintiff Donald K. Andrew, Jr., a prisoner at the Worcester County

Jail and House of Correction in West Boylston, Massachusetts, filed a voluminous (579-page)

self-prepared civil rights complaint (with attachments) against a number of defendants, including

state court judges, clerks, prosecutors, attorneys, sheriffs, and prison officials.  Specifically, the

named defendants are:  (1) Judge Moriarty; (2) Judge Lemire; (3) Sheriff Guy Glodis; (4) Special

Sheriff Jeffrey Turco; (5) Deputy Chappel; (6) Lt. Betty; (7) Representative Paolo Franseze; (8)

Clerk of Records Difilippo Luigi, (9) Steve Kennedy; (10) Carmen Eldrige; (11) Assistant

Superintendent Legendre; (12) Dennis P. McManus; (13) Clerk Connie; (14) Tony Rabidon; (15)

Kevin Gabidon; (16) Catherine Brennan; (17) "Tempsey"; (18) Joseph D. Early, Jr.; (19) Glenn

Ludwig, Chief of the Forfeiture Unit; (20) Sandra Hautanen, Assistant District Attorney; (21)

Attorney Patrick Burke; (22) Attorney Loconto; and (23) Attorney John Goggins.

Andre's complaint stems from his state criminal trial on drug trafficking charges. These charges arose from a search of Andre's apartment on February 26, 2010, after police detectives of the Southbridge Police Department obtained a warrant authorizing the search. The warrant was based on information obtained from two confidential informants who observed Andre selling heroin in two separate controlled buys. The search uncovered a plastic bag with 25 grams of heroin, a digital scale, plastic baggies, cutting agents, and other drug-related paraphernalia, as well as $4,162 in cash.

Andre's hand-written complaint is not entirely coherent or organized, and is set forth essentially in narrative form. In brief, Andre's civil action makes sweeping allegations that his civil and constitutional rights were violated by the various personnel at the Worcester County Jail and House of Corrections ("WCJHC"), the judges presiding over his state criminal trial and related hearings, prosecutors, court clerks, and others. Andre alleges that the defendants conspired to deprive him of his access to the courts by tampering with, and destroying, his mail. He further alleges that defendants' conduct "railroaded" his defense, thereby preventing him from having meaningful access to the courts in violation of 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

Counts I and II of the complaint allege due process and equal protection violations under 42 U.S.C. § 1983 against Judge Cornelius J. Moriarty and Judge James R. Lemire. Andre alleges that Judge Moriarty arbitrarily denied his motions during trial, and otherwise acted unfairly, improperly, unprofessionally, and with bias. Andre asserts that Judge Moriarty's conduct makes him a joint participant in the conspiracy by defendants to "railroad" his defense and deprive him of his constitutional rights.

With respect to Judge Lemire, Andre alleges that he disregarded and unlawfully admitted exculpatory evidence, ignored police misconduct, erred in denying his court motions, ignored clerical errors made by court personnel, openly mocked him, condoned the destruction of his mail by court clerks, and neglected to control courtroom misconduct by court officers and others. Andre seeks compensatory and punitive damages as well as declaratory and injunctive relief.

Counts III and IV of the complaint allege § 1983 violations based on the conduct of a number of officers and personnel at WCJHC and Worcester Superior Court. In particular, Andre alleges that personnel at WCJHC and Worcester Superior Court conspired to "railroad" the defense of his criminal case by interfering with, and destroying, his mail, and otherwise preventing him from communicating with the court. He further alleges mail fraud and forgery by these individuals. Additionally, Andre alleges that Clerk Magistrate Dennis McManus is liable because he failed to prevent the misconduct of his subordinates. He seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Count V of the complaint raises violations of § 1983 by individuals at the District Attorney's Office including Joseph Early (District Attorney), Glenn Ludwig (Chief Assistant District Attorney of the Forfeiture Unit), and Sandra Hautanen (Assistant District Attorney). Against defendant Hautanen, Andre alleges that she facilitated the conspiracy by knowingly failing to object in court to false statements, and by committing perjury in court proceedings. Similarly, Andre alleges that defendants Early and Ludwig were aware of the conspiracy against Andre and failed to stop it, making them liable as well. He seeks compensatory and punitive damages as well as declaratory and injunctive relief against these defendants.

Count VI of the complaint alleges violations of § 1983 by attorney Patrick Burke and

attorney Loconto. Andre's wife, Danielle Thurlow, was represented by attorney Burke in the underlying criminal case. Attorney Loconto's connection to the case is not clear from the complaint. In any event, Andre alleges that these defendants manipulated, defrauded, and coerced Ms. Thurlow into accepting a plea bargain with the Commonwealth relating to controlled substances discovered by police at her residence shared with Andre and their children. Andre further alleges that defendants Burke and Loconto conspired to deceive Ms. Thurlow and "railroad" Andre's criminal defense. He seeks compensatory and punitive damages as well as declaratory and injunctive relief.

Count VII of the complaint alleges § 1983 violations by John Goggins, Andre's court-appointed counsel in his underlying criminal trial. According to Andre, attorney Goggins rendered misguided and unsolicited legal advice, made administrative errors in his representation, and deterred a witness who would have supported Andre's suppression motion. As a result, Andre alleges that Mr. Goggins joined in the conspiracy to "railroad" his criminal defense. Andre seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Accompanying his complaint, Andre filed a motion for leave to proceed *in forma pauperis* (Docket No. 2) and an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket No. 3). Thereafter, on January 24, 2011, Andre filed a pleading entitled "Notice" along with various exhibits concerning his incoming and outgoing mail from the WCJHC (Docket No. 5). The Notice concerns Andre's motion in state court to compel or order incoming legal mail logs from the WCJHC. Andre contends he wanted Judge Tucker to witness his impeded access, mail fraud, and the improper policy of the WCJHC. On January 19, 2011, the mail logs from March 1, 2010, to January 19, 2011, were sent to Andre by the Worcester County Sheriff's

4

Department; however, Andre contends that there are mail logs missing from the package provided to him. He contends he needs those logs to prove that the WCJHC is committing a fraud.

Also on January 24, 2011, Andre filed two Affidavits of Danielle Thurlow (Docket Nos. 6 and 7) concerning attorney Burke, and the state court proceedings with respect to forfeiture issues and a plea bargain. On January 28, 2011, Andre filed a certified prison account statement (Docket No. 9).

On February 11, 2011, Andre filed a 64-page "Notice of New Discovery & Criminal Complaint Filed with the U.S. Postal Services" (including attachments) (Docket No. 10). He complains that he lost $4,162 (the seized funds) and complains of mail fraud, as well as Judge Tucker and Judge Lemire's refusal to review his proof contained in his motion for a subpoena duces tecum. He asserts allegations of "nepotism" and improper policies by various persons, departments, attorneys, prosecutors, clerks and judges.

On February 15, 2011, Andre filed a document entitled "Motion: Objection to Ignored Mail Fraud & Impeded Access" (Docket No. 11). This document appears to have been directed to the Worcester Superior Court in connection with *Commonwealth v. Andre*, Docket No. CR 10-469. Andre seeks relief from the state court with respect to alleged mail fraud. Also on February 15, 2011, Andre filed another document directed to the Worcester Superior Court, entitled "Motion: Objection to Impeded Access." (Docket No. 12).

On February 24, 2011, Andre filed a document entitled "Mail Fraud Ignored & Access to Courts Denied; Relief has been Exhausted in Worcester Superior Ct., & Bad Faith Cont.d" (Docket No. 13). The pleading references three incorporated motions, including a motion against WCJHC for contempt, and motions to compel with respect to defendant McManus and ADA

Hodgens.  Andre also filed a "Supplemental Attachment to Defendant John Goggins & the Seventh Cause of Action" (Docket No. 14).  That pleading addresses a hearing in state court in January 2011, concerning whether Attorney Goggins should serve as stand-by counsel.  He complains that his counsel offers no assistance and continues to "railroad" his defense, acting as "a toy soldier for the state in the ongoing conspiracy to obtain a state conviction win . . . ."  (*Id.* at 4).

On February 24, 2011, Andre filed a motion for joinder of new defendant (Docket No. 15), and a supplemental attachment to complaint (Docket No. 16).  In the request to amend the complaint to add Beverly Gravison as a defendant, Andre alleges that she was hired to investigate and retrieve documents and information on his behalf.  He claims that she failed to do her job as instructed, and charged her for her services.  He contends that her malpractice has abridged his rights and undermined his defense, and therefore she has joined in the conspiracy with Attorney Goggins to "railroad" his criminal defense.  The supplemental attachment (Docket No. 16) includes a pleading of the state court indicating Andre filed a *pro se* motion to discharge stand-by counsel and re-appoint new stand-by counsel.

On February 25, 2011, Andre filed a return of service (Docket No. 17) with copies of certified mail receipts.

On March 4, 2011, Andre filed a Motion to Amend Complaint (Docket No. 18) seeking to substitute the name one of the defendants from Kevin Gabidon to Kevin Goldon.  He alleges that he recently discovered the correct name through the Worcester Superior Court Clerk's Office.

On March 15, 2011, Andre filed a 71-page pleading entitled "Further Custom Usage of Policy & Bad Faith in Dennis P. McMannus's; Joseph D. Early's Departments."  Included in the

package of materials was a copy of a pleading submitted to the Massachusetts Supreme Judicial Court, entitled "Supplemental To Writ of Protection Attachment "E" and a motion to the Worcester Trial Court entitled "Relief From Judgment" with an attached memorandum of law. The materials relate to a co-inmate, Ronald Williams, who Andre alleges suffered a similar bad-faith prosecution and forfeiture proceedings.

On March 22, 2011, Andre filed a pleading entitle "1st Notice of Appearance; Waiver of Service, attaching the notice of appearance by Assistant Attorney General Randall E. Ravitz on behalf of defendants Moriarty, Lemire, McManus, Connie, Rabidon, Gabidon, Goldon, Golden, Brennan, Tempsey, Early, Ludwig, and Hautenen."[1]   *See* Docket No. 23.

On March 23, 2011, Andre filed a pleading entitled "Proof of Completed Service on Behalf of Plaintiff" along with certified mail information.  *See* Docket No. 24.

On March 25, 2011, Andre filed a pleading entitled "First Justice Review Exhausted & Relief Denied" notifying this Court that the Massachusetts Supreme Judicial Court has denied his motions and any relief with respect to his civil rights complaint against Judge Moriarty and others. Attached to this pleading were copies of state court pleadings, including an Emergency Writ of Protection Application, a Motion for Protection and Disipline [sic] Against Judicial Misconduct, a motion to suppress, docket sheets, and other records.

Also on March 25, 2011, Andre filed a "2nd Notice of Appearance; Waiver of Service" with respect to certain defendants.  Thereafter, on March 28, 2011, Andre filed a "3rd notice of Appearance; Waiver of Service," attaching the notice of appearance of Attorney Stephen J.

---

[1] The notice of appearance indicates that counsel did not waive any affirmative defenses, including, among other things, those under Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6).

Duggan on behalf of defendant Patrick Burke.

## II.     Analysis

### A.     Prior Related Litigation

This action is plaintiff's second attempt to have federal judicial review regarding his state criminal prosecution.  *See Andre v. Southbridge Police Department, et al.*, Civil Action No. 10-40115-FDS.  In that earlier action, plaintiff sought to have his criminal case removed to this Court based on alleged civil rights violations by police officers.  On October 21, 2010, the action was ordered remanded to the Worcester County Superior Court.  *See* Memorandum and Order (Docket No. 5); Order for Remand (Docket No. 6).

### B.     The Motion for Leave to Proceed *In Forma Pauperis*

Plaintiff's financial disclosures contained in his motion for leave to proceed *in forma pauperis* indicate that he is unemployed and has no substantial assets or income.  In view of these disclosures, this court finds plaintiff has demonstrated that he is without sufficient funds to pay the $350.00 filing fee, and therefore his motion for leave to proceed *in forma pauperis* (Docket No. 2) is ALLOWED; however, because plaintiff is a prisoner, he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).

In light of this, it is hereby ordered that:

1.     Plaintiff Andre is assessed  an initial partial filing fee of $2.03, pursuant to 28 U.S.C. § 1915(b)(1)(A);[2]

---

[2] This assessment was based on a calculation of the average deposits over the roughly six-month period based on the prison account information submitted.  This assessment is without prejudice to plaintiff seeking reconsideration provided he submit an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).  Further, the initial partial assessment is made notwithstanding that collection of the assessed fee may be problematic because plaintiff may not have sufficient funds in his prison account.  Nevertheless, the *in*

2.      The remainder of the fee $347.97 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions filed by plaintiff. For purposes of clarification for crediting any funds received, and to facilitate proper record-keeping by the Treasurer's Office at WCJHC and by the District Court Clerk's Office Accounting Department, this Court intends that any funds received from plaintiff's prison account should first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.[3]

### C.    __The Motion for Writ of Habeas Corpus__

As noted above, along with his complaint, plaintiff filed a motion for writ for habeas corpus pursuant to 28 U.S.C. § 2241. From his pleadings, it appears that plaintiff is seeking both release from custody as well as non-habeas relief (*i.e.*, monetary damages and injunctive relief). Generally, a party may only challenge his custody through a habeas petition and may not also seek monetary relief. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) (prisoner challenging the very fact or duration of his physical imprisonment and seeking determination that he is entitled to immediate release or speedier release from such imprisonment must proceed under habeas laws); *Allen v. McCurry*, 449 U.S. 90, 104 (1980) ("[T]he purpose of [the writ of habeas corpus] is not

---

*forma pauperis* statute provides for assessment at the time of filing suit, with collection to be made "when funds exist." 28 U.S.C. § 1915(b)(1).

[3] In other words, plaintiff's filing-fee obligation in this action shall be collected consecutively and not simultaneously with any prior filing-fee obligation imposed by any court. *See Ruston v. NBC Television*, USCA No. 06-4672-cv (2d Cir. 2009) *citing Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001). *See also Lafauci v. Cunningham*, 139 F. Supp. 2d 144, 147 (D. Mass. 2001) (reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns").

to redress civil injury, but to release the applicant from unlawful physical confinement.").
Because plaintiff filed this action initially as a civil rights action seeking non-habeas relief against
numerous defendants, the Court will not convert this action *sua sponte* into a habeas petition
under 21 U.S.C. § 2241.[4]

In any event, the Court sees no basis for § 2241 relief where, as here, it does not appear
that plaintiff has completed the state court process and exhausted all of his state appellate avenues
and collateral attacks under 28 U.S.C. § 2254. Therefore, plaintiff cannot show that he is in
custody unlawfully in violation of the United States Constitution or federal laws. Accordingly,
plaintiff's Motion for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Docket No. 3) is DENIED
without prejudice.

### D.    The Court May Screen the Complaint

Because plaintiff is a prisoner (and because this Court construes this to be a civil action
under 42 U.S.C. § 1983 and not a habeas petition), he is subject to the provisions of the Prison
Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of
Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions that grant this Court the
authority to screen and dismiss prisoner complaints. *See* 28 U.S.C. § 1915 (proceedings *in forma
pauperis)*; 28 U.S.C. § 1915A (screening of prisoner suits against governmental officers and
entities). Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to

---

[4] The proper respondent in a habeas petition is the petitioner's immediate custodian. Here, plaintiff is
suing a number of judges, clerks, prosecutors, prison staff, and others seeking non-habeas relief, rather than his
immediate custodian. Additionally, there are other differences between a habeas action and a non-habeas civil
action, including, among other things, the availability of a jury trial in non-habeas actions, differing filing fees
($5.00 for habeas petitions; $350 for civil actions), and the availability of appointed counsel ( *pro bono* only in
civil cases versus appointment under the Criminal Justice Act).

proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (ii) and (iii). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. *Neitzke*, 490 U.S. at 327-328; *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

In addition, section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A. In connection with the preliminary screening, the *pro se* complaint is construed generously. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000). The Court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation," and "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting in part *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Here, this action is subject to dismissal based on a variety of legal doctrines, each of which are sufficient to bar plaintiff's claims.

E. **The Claims Against Judges Moriarty and Lemire Are Barred by Absolute Judicial Immunity**

Plaintiff's civil rights claims against Judges Moriarty and Lemire are not plausible because absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (stating that judges are immune "from liability for damages for acts committed within their judicial jurisdiction . . . even when the judge is accused of acting maliciously and corruptly"); *Allard v. Estes*, 197 N.E. 884, 886 (1935) (stating that it is "too well settled to require discussion, that every judge, whether of a higher or lower court is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law."). The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have. . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (quoting *Forester v. White*, 484 U.S. 219 226-27 (1988)).

Here, there is no reasonable or credible allegation that the actions or inactions of these judges were taken outside the scope of their jurisdiction. Moreover, mere assertions of a conspiracy, without more, cannot establish a cognizable legal claim, nor can artful pleading in the use of the term "conspiracy" create a claim without an underlying factual basis for the assertion.

*See Frierson-Harris v. Kall*, 2006 WL 2373231, at *1 (7th Cir. 2006) (". . . judges generally 'agree' with one side in litigation when ruling against the other; such agreements are not corruptions of the judicial process") (not selected for publication).

In light of the above, the actions or inactions of the defendant judges do not constitute the type of extra-judicial activity exempting them from entitlement to absolute judicial immunity. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and (iii), plaintiff's claims against Judges Moriarty and Lemire (Counts I and II) are subject to dismissal.

**F.      The Claims Against Judicial Employees Are Barred by Quasi-judicial Immunity**

Similarly, the doctrine of quasi-absolute judicial immunity extends to employees of a court when they perform tasks that are an integral part of the judicial process. *See Book v. Dunlavey*, 2009 WL 891880, *4 (W.D. Pa. 2009), *citing Gallas*, 211 F.3d at 772-73 (deputy court administrator); *Mullis v. United States Bankr. Court for the Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987) (clerks and deputy clerks); *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quasi-judicial immunity applied to court support personnel because of "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts").

Here, plaintiff is suing the Clerk of the Court, Dennis P. McManus, as well as various other court personnel including "Clerk Connie," Tony Rabidon, Kevin Gabidon, Catherine Brennan, and "Tempsey." Although the complaint makes amorphous allegations concerning the actions of these defendants constituting fraud or mail tampering, it fails to set forth factual underpinnings for these claims that would set forth plausible claims that they were not performing

13

integral judicial tasks. Rather, the claims against these defendants are legal conclusions without factual support. Thus, the claims against them (Counts III and IV) are also barred by quasi-judicial immunity and pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and (iii) are subject to dismissal.[5]

### G. The Claims Against Various Attorneys at the District Attorney's Office Are Barred by Prosecutorial Immunity

The claims against defendants Joseph D. Early, Jr. (District Attorney), Glenn Ludwig (Chief of the Forfeiture Unit), and Sandra Hautanen (Assistant District Attorney) are barred under the doctrine of prosecutorial immunity. Prosecutors are entitled to absolute immunity when they engage in activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Reid v. State of New Hampshire*, 56 F.3d 332, 337 (1st Cir. 1995). Conduct falling within this category is not limited to conduct occurring in the courtroom. It includes actions where prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial . . . ." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* It may include obtaining evidence

---

[5] Moreover, to the extent that Andre is seeking to hold any of these defendants liable for alleged violations of his civil rights based on their supervisory roles, such claims are not legally cognizable because *respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983 (the vehicle for asserting constitutional violations by state actors). *See Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable under § 1983). Further, although Andre alleges a failure of the Clerk to prevent misconduct of court employees, he fails to set forth a plausible failure-to-intervene claim.

for the initiation of criminal process. *Imbler*, 424 U.S. at 431 n.33. Moreover, "[a]bsolute immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, so long as the prosecutor is exercising quasi-judicial power and not merely operating in an investigatory or administrative role." *Easton v. Gianetti*, 1997 WL 220312 (N.D. Cal. 1997) (citing *Imbler*, 424 U.S. at 427 and n.27).

Here, the complaint alleges that defendant Hautanen facilitated a conspiracy by failing to object to false statements made in court and by committing perjury in court proceedings. These allegations clearly relate to her prosecutorial functions (rather than investigative functions) and thus implicate the doctrine of absolute prosecutorial immunity.

With respect to defendants Early and Ludwig, the complaint alleges that they knew of the alleged conspiracy and misconduct by defendant Hautanen but failed to intervene. Similarly, these defendants were acting in their capacity as prosecutors for the Commonwealth rather than investigators. Thus, they are also entitled to prosecutorial immunity.[6]

Accordingly, the claims against defendants Hautanen, Early, and Ludwig (Count V) are barred by prosecutorial immunity and, pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and (iii) are subject to dismissal.

**H.      The Claims Against Personnel at the Worcester County Sheriff's Department Fail to State a Claim for Relief upon Which Relief Can Be Granted**

The complaint alleges a vast, overarching conspiracy between personnel at the Worcester

---

[6] As an additional matter, to the extent that plaintiff is seeking to hold District Attorney Early and defendant Ludwig liable for alleged violations of civil rights based on alleged acts of Assistant District Attorney Hautanen, such claims are not legally cognizable because *respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983. *See Velez-Rivera*, 437 F.3d at 156.

County Sheriff's Department to "railroad" the defense of his criminal case by misplacing or otherwise destroying plaintiff's outgoing mail. The complaint, in a very terse and conclusory fashion, makes claims of direct and supervisory liability against these defendants. A general allegation of conspiracy to violate civil rights is not sufficient to meet the pleading requirement to assert cognizable claims of a conspiracy. Rather, the allegations must set forth what part each defendant had in the alleged conspiracy, *i.e.*, it must set forth the "who did what to whom and why." *Columbus v. Biggio*, 76 F. Supp. 2d, 43, 52 (D. Mass. 1999) ("Although pleading standards are minimal, the First Circuit requires 'more than conclusions or subjective characterizations.'") *citing Dewey v. University of New Hampshire*, 694 F. 2d 1, 3 (1st Cir. 1982), *cert. denied*, 461 U.S. 944 (1983). "To present an adequate conspiracy claim, there must be allegations of a common understanding between the conspiring parties." *Dickinson v. Flanagan*, 893 F.2d 1338 (Table), 1990 WL 1421, *1 (9th Cir. 1990) (unpublished decision) *citing Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989) *cert. denied* 110 S.Ct. 69 (1989). In other words, to state a claim for civil rights conspiracy, the complaint must plead that (1) two or more individuals acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means; (2) an agreement between the individuals to inflict an injury upon him, and (3) an overt act that results in damages. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988) ("A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" (internal quotations omitted)). Thus, for a conspiracy to be actionable, it must have resulted in an "actual deprivation of a right secured by

the Constitution and Laws." *Id.*; *Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir. 1989).

The claims against defendants Steven Kennedy and Carmen Eldridge for their alleged direct involvement in the conspiracy, as well as claims against supervisory defendants Jeffrey Turco (prison lawyer), Lieutenant Betty and Deputy Chappel (records), Sheriff Guy Glodis, Difilippo Luigi (Clerk of Records), and Assistant Superintendent Legendre, are subject to dismissal for failing to state a claim sufficiently under Rule 8(a) of the Federal Rules of Civil Procedure.[7] As to defendants Kennedy and Eldridge, the complaint fails to identify—with factual support as opposed to legal conclusions—an agreement between these individuals and how in fact they acted in concert to "railroad" plaintiff's criminal defense. As such, the claims against these defendants are subject to dismissal.

As to the remaining defendants, the claims are subject to dismissal to the extent that they are based on a theory of vicarious liability for the actions of employees or subordinates. *Respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983. *See Velez-Rivera*, 437 F.3d at 156; *Cepero-Rivera v. Fagundo*, 414 F.3d 145, 156 (1st Cir. 2005). In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their

---

[7] Rule 8(a) requires a plaintiff to include in a complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Twombly,* 550 U.S. 544, 555 (2007) (alteration in original)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "['']meaningful opportunity to mount a defense.'" *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)). *See Redondo-Borges v. U.S. Dept. of Housing and Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988)).

command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Id.* at 156 (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)); *see Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). *See also Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials).

The complaint does not set forth any factual basis for the direct liability of defendants Kennedy and Eldridge nor does it set forth factual basis for § 1983 liability with respect to defendants Jeffrey Turco, Lt. Betty, Deputy Chappel, Sheriff Guy Glodis, Difilippo Luigi, and Assistant Superintendent Legendre. Simply putting these defendants on "notice" by sending letters is not sufficient to join them in a conspiracy and create supervisory liability. Moreover, to the extent that the complaint can be read broadly to assert claims against these supervisory defendants based on these communications to defendants, these assertions are insufficient to raise § 1983 liability on the theory that the defendants failed to intervene.

Section 1983 claims based on the failure to intervene turn on whether the defendants' actions were reckless or callously indifferent to plaintiff's civil rights. *See Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 92 (1st Cir. 1994) ("[A] supervisor cannot be held liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others."); *Reid v. Brodeur*, 2001 WL 274843 at 84 (D.N.H. 2001) (noting that the test for determining what constitutes reckless or callous indifference is whether it would be apparent to a reasonable supervisor that his conduct was "very

likely to violate an individual's constitutional rights").

Here, there is nothing pleaded in the complaint from which this Court could reasonably infer that the supervisory defendants' actions or inactions constituted encouragement, condonation, or acquiescence in a constitutional violation, sufficient to state a plausible claim upon which relief can be granted. Therefore, the claims against these defendants are also subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.   **The Claims Against Attorney Patrick Burke, Attorney Loconto, and John Goggins Must Also Be Dismissed**

Count VI and VII of the complaint alleges violations of § 1983 by attorney Patrick Burke, who represented Andre's wife (Ms. Thurlow) in the underlying criminal case; attorney Loconto (whose involvement is not clear from the complaint); and attorney John Goggins, plaintiff's court-appointed counsel in his criminal trial. In addition to the fact that plaintiff's claims against these defendants fail to state a claim upon which relief can be granted due to the conclusory and vague nature of the allegations, these claims fail on more fundamental grounds.

First, with regard to the claims against Patrick Burke and attorney Loconto concerning their actions with his wife, plaintiff lacks standing to sue under § 1983 because he has not personally suffered an injury. *See Colon-Andino v. Toledo-Davila*, 634 F. Supp. 2d 220, 229 (D. P.R. 2009) ("Article III of the Constitution limits standing in federal courts to persons who have suffered injury in fact, and recovery is not ordinarily permitted for the injury of another."). The complaint alleges that defendant Loconto lied to Ms. Thurlow and attempted to instill fear and doubt in her. It also alleges that defendant Burke coerced Ms. Thurlow "to agree with the state and railroad herself." However, a claim under 42 U.S.C. § 1983 must allege an injury to a

cognizable interest and that injury must be "casually related to the challenged conduct" such that the injury may be addressed by the litigation in question. *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006). The allegations concerning defendants' alleged acts towards Ms. Thurlow do not rise to that level. Accordingly, the claims against defendants Burke and Loconto (Count VI) are subject to dismissal.

Next, the claim against his court-appointed attorney, John Goggins, fails to satisfy the essential requirements of a § 1983 action and thus is also subject to dismissal. Court-appointed attorneys representing a client in the defense of a criminal charge are not acting "under color of state law" within the meaning of the § 1983. Indeed, courts have uniformly held that attorneys, whether appointed or retained, are *not* acting under color of law for purposes of § 1983 liability. *See, e.g., Page v. Sharpe*, 487 F.2d 567, 569-570 (1st Cir. 1973); *Szijarto v. Legeman*, 466 F.2d 864 (9th Cir. 1972); *French v. Corrigan*, 432 F.2d 1211, 1214 (7th Cir. 1970), *cert. denied* 401 U.S. 915 (1971); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968). *See also Polk County v. Dodson*, 454 U.S. 313, 471 (1981) (a public defender does not act under the color of state law in performing a lawyer's traditional function as counsel to an indigent defendant and therefore cannot be sued under §1983 as an agent of the state); *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986) (same). Even where a plaintiff claims his liberty has been effected by ineffective assistance of counsel (as is alleged here), this Court has previously held that:

> In the area of civil rights law, . . . it is well settled that the state appointed attorneys performing traditional functions as counsel to not act under color of state law within the meaning of 42 U.S.C. §1983 . . . . Even when the defective performance of the state appointed attorney causes "the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be

responsible for the unconstitutional state action does not himself act under color of state law within the meaning of §1983."

*Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001) (Stearns, J.) *citing Polk*, 454 U.S. at 325, *Harris v. Champion*, 51 F.3d 901, 909-10 (10th Cir. 1995), and *quoting Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983).

Accordingly, Count VII of the complaint is also subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Moreover, based on this same reasoning, the claims against attorneys Patrick Burke and attorney Loconto also are subject to dismissal for lack of state action.[8]

## J.  **Failure to Plead a Lack of Adequate State Remedy**

As an additional matter, while plaintiff contends that his due process rights have been violated with respect to his criminal case, he has not alleged sufficiently that he has an inadequate state remedy to redress these alleged violations. When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate post-deprivation remedy, there is no denial of due process. *See Hudson v. Palmer*, 468 U.S. 517, 531-37 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-44 (1981); *O'Neill v.*

---

[8] The First Circuit employs a three-part test to determine whether a private party can be characterized as a state actor: the state-compulsion test, the nexus/joint-action test, and the public function test. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4-7 (1st Cir. 2005) *citing Rockwell v. Cape Cod Hospital*, 26 F.3d 254, 257 (1st Cir. 1994) and *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18-21 (1st Cir. 1999). "Under the state compulsion test a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" *Estades-Negroni*, 412 F.3d at 4 (quoting *Blum v. Yaretsky*, 457 U.S. 991 (1982)). Under the nexus/joint-action test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" *Id.* at 5 (quoting *Bass v. Parkwood Hospital*, 180 F.3d 234, 242 (5th Cir. 1999)). Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" *Id.* (quoting *Blum*, 457 U.S. at 1005). Here, the complaint has not set forth any facts from which this Court reasonably could infer state action by these attorneys.

*Baker*, 210 F.3d 41, 50 (1st Cir. 2000). *See also Riordan v. Martin*, 51 F.3d 264 (1st Cir. 1995) (unpublished disposition stating that "[s]ince inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory."). Here, there is nothing in the complaint from which this Court reasonably could infer that plaintiff is unable pursue appellate avenues with respect to an adverse final criminal judgment or to seek reconsideration of adverse rulings from the state judges. Further, to the extent that adverse rulings currently are being made against him in connection with pending litigation, his due process claims are premature, inasmuch as he has not shown that he does not have nor will not have an adequate state court remedy to contest those adverse rulings in the normal course.

Accordingly, all of plaintiff's claims relating to his criminal case, including his claims relating to his missing money of $4,162, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### K. The Claims Are Barred by the Abstention Doctrine or the Favorable Termination Rule

In addition to the other legal impediments noted above, the complaint, is barred either because of principles of abstention or because of the favorable termination rule.

It is well-settled that a civil rights claim under 42 U.S.C. § 1983 that relates to a criminal prosecution and/or to the unlawfulness of confinement does not accrue unless the prisoner has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action, or condition of confinement. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Under the so-called "favorable termination rule" of *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* (emphasis added; footnote omitted). Without such a showing of a favorable termination, a prisoner's cause of action under § 1983 has not yet accrued. *Id.* at 489. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). In other words, under *Heck* and its progeny, a claim under § 1983 that would necessarily imply the invalidity of the states' deprivation, punishment, or duration of confinement may not be brought unless and until the condition is reversed. If success under a § 1983 claim would either directly or indirectly result in speedier release, which properly lies at "the core of habeas corpus," it cannot be brought under 42 U.S.C. § 1983. *Id.* at 82 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).

The case of *Wallace v. Kato*, 549 U.S. 384 (2007), refined the application of the favorable termination rule. *Wallace* concluded that if a pretrial plaintiff files a claim related to rulings that *will likely be made* in a pending or anticipated criminal trial, a district court may stay the civil action until the criminal case (or likelihood of criminal case) has finally concluded. *Id.* at 393-394; *Crooker v. Burns*, 544 F. Supp. 2d 59, 64-65 (D. Mass. 2008). By staying the action, the court avoids having to guess whether a ruling in the civil suit would impugn or imply the invalidity of a future conviction, which would require dismissal under *Heck*. *Wallace* also stands for the proposition that the *Heck* bar

23

does apply after the institution of legal process when damages are sought for confinement due to that legal process. *See Wallace*, 549 U.S. at 393 ("We assume that . . . the *Heck* principle would be applied [to] . . . the date petitioner became held pursuant to legal process ").

Here, plaintiff's custodial status is not entirely clear; however, in either event, his claims regarding a conspiracy to "railroad" his defense are not ripe, as they could invalidate his conviction or rulings that might be made in connection with his criminal prosecution. Regardless of whether a court is staying the civil case or strictly applying the favorable termination rule, the critical issue here is whether a ruling in this civil case would impugn a future or current criminal conviction. Under *Wallace*, this Court could stay (or administratively dismiss without prejudice to reopen) after completion of the state criminal proceedings. *Wallace*, 549 U.S. at 393-394 ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended"). This matter would be resolved based not on *Heck*, but on application of principles of abstention:

> *Heck* does not address the availability of § 1983 absent a state criminal conviction. Although some courts have relied on *Heck* and its logic to dismiss such suits, ... the better way to view such suits is not as a *Heck* issue but rather as the *Younger* [v. Harris, 401 U.S. 37 (1971)] issue raised in *Tower v. Glover* [, 467 U.S. 914 (1984)] but never authoritatively resolved by the Court. The Court in *Heck* seems to have contemplated the application of abstention principles to pre-conviction challenges to aspects of the state criminal process.

Steven H. Steinglass, 2 Section 1983 Litigation in State Courts § 18:18 (Oct. 2009) (footnotes omitted; brackets added).[9]  In light of this, the conspiracy claims are subject to dismissal.

---

[9] Principles of abstention permit this Court to decline exercising jurisdiction over the claims that would result in this Court's intervention in the ongoing state proceedings. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court reiterated "the fundamental policy against federal interference with state criminal prosecutions." *Id.* at 46. This doctrine of abstention "is based on principles of comity, and unless there are extraordinary circumstances, it instructs federal courts not to 'interfere with ongoing state-court litigation.'" *Rossi v. Gemma*,

## L.     Plaintiff's Requests for Injunctive Relief Are Subject to Dismissal

Finally, as noted above, plaintiff has filed a number of pleadings notifying this Court of his objections and requests for relief from mail fraud.  To the extent that these filings are construed as an attempt by plaintiff to obtain preliminary or emergency injunctive relief from this Court regarding his mail fraud allegations (as they relate to his criminal case in the Worcester Superior Court), any request for such relief, or, for that matter, for interference with state criminal proceedings, is DENIED.  Among other things, the requests are not properly before this Court, and such requests fail to comport with the requirements of Rule 65 of the Federal Rules of Civil Procedure.[10]

## M.     The Motion for Joinder of New Defendant and the Motion to Amend Complaint

As noted above, on February 24, 2011, plaintiff filed a motion seeking to add Beverly Gravison, an investigator, as a defendant, on the grounds that she joined in the conspiracy with Attorney Goggins to "railroad" his defense.  Thereafter, plaintiff filed a motion to amend

---

489 F.3d 26, 34 (1st Cir. 2007) (quoting *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 31 (1st Cir. 2004)). *Younger* abstention extends to civil cases where the requested relief would (1) interfere with ongoing state judicial proceedings; (2) that implicate an important state interest; and (3) that provide an adequate opportunity for the federal plaintiff to advance his federal claim. *Id.* at 34-35.

[10] To obtain the extraordinary remedy of preliminary injunctive relief, plaintiff must show that (1) he will suffer irreparable harm absent an injunction; (2) the injury outweighs the harm to the defendants if granted; (3) he is likely to succeed on the merits of the case, and (4) the injunction does not adversely affect the public interest. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 70 (D. Me. 1993) (extending four part preliminary injunction test to temporary restraining orders).  To warrant the more extraordinary relief of a temporary restraining order, plaintiff  must demonstrate that his injury of loss is "immediate and irreparable."  Fed. R. Civ. P. 65(b).  For the reasons stated herein, this Court cannot find plaintiff has shown a likelihood of success on the merits.  In addition, to the extent that plaintiff is complaining about his mail processing by prison employees, he has not shown that he has exhausted his administrative prison remedies, and thus preliminary injunctive relief is premature.

complaint to substitute the name of defendant Kevin Gabidon to Kevin Goldon.

The Court construes this motion as one for leave to file an amended complaint. The motion will therefore be ALLOWED because plaintiff may amend once as of right. *See* Fed. R. Civ. P. 15(a). Nevertheless, the claims are not cognizable for the reasons set forth above.

This Court also ALLOWS the motion to amend complaint (Docket No. 18) in order to make the name change from Kevin Gabidon to Kevin Golden; however, the claims are subject to dismissal for the reasons stated above.

### N.    Defective Proof of Service

Andre filed a number of certified mail return receipts purportedly as proof of service on the defendants. At this juncture, this Court has not permitted this action to proceed or directed summonses to issue. If and/or when summonses issue in this action, service of process must be made on the defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure. Thus, plaintiff's purported service of process by certified mail is defective.

## III.    Order to Show Cause

In light of the above, this action will be DISMISSED within 42 days from the date of this memorandum and order unless plaintiff demonstrates good cause in writing why this action should not be dismissed for the various reasons stated herein. Plaintiff's show-cause response shall not reiterate the claims made in the original complaint, but should address specifically the legal impediments discussed herein, including: (1) absolute judicial immunity; (2) quasi-judicial immunity; (3) absolute prosecutorial immunity; (4) lack of *respondeat superior* liability; (5) failure to set forth plausible failure to intervene claims; (6) failure to plead conspiracy claims in accordance with Rule 8 of the Federal Rules of Civil Procedure; (7) failure to plead an inadequate

state remedy; (8) lack of standing and lack of state action with respect to court-appointed defense counsel; and (9) application of abstention principles or the *Heck* favorable termination rule as a bar.

The show-cause response shall be limited to 10 double-spaced pages, and shall *not* include any exhibits. Plaintiff shall also include legal authority that would undermine application of the various doctrines barring his claims.[11] Failure to comply with the directives of this Court will result in a dismissal of this action.

In order to ensure proper case management and to ensure that scarce judicial resources are not wasted, Andre is hereby PROHIBITED from filing any further "Notices," "Supplements," "Motions" or other pleadings until further Order of the Court. Plaintiff may not file any further amendments to the complaint (as amended by Docket Nos. 15 and 18) without leave of Court upon good cause shown. At this juncture, the only future pleading he may file is a show cause response to this memorandum and order.

## IV. Conclusion

For the foregoing reasons, it is hereby ordered that:

1.  Plaintiff's motion for leave to proceed *in forma pauperis* (Docket No. 2) is ALLOWED and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.  Plaintiff's motion for writ of habeas corpus (Docket No. 3) is DENIED;

3.  To the extent plaintiff seeks temporary or preliminary injunctive relief with respect

---

[11] Ordinarily, the Court would afford a plaintiff an opportunity to file an amended complaint curing the pleading deficiencies; however, in light of the various legal impediments noted herein, based on the Court's inherent authority to manage its cases, plaintiff will be required to file a show cause response instead. Based on that document, the Court then would consider the propriety of directing an amended complaint be filed.

to his claims of mail fraud, such request is DENIED;

4.    Plaintiff's motion for joinder of new defendant (Docket No. 15) is construed as a motion to amend complaint and is ALLOWED;

5.    Plaintiff's motion to amend complaint (Docket No. 18) to change the name of defendant Kevin Gabidon to Keven Goldon is ALLOWED;

6.    This action shall be dismissed in its entirety within 42 days of the date of this memorandum and order unless plaintiff demonstrates good cause in writing why this action should not be dismissed;

7.    Plaintiff is PROHIBITED from filing any further "Notices," "Supplements," "Motions" or other pleadings until further order of the Court. Plaintiff may not file any further amendments to the complaint (as amended by Docket Nos. 15 and 18) without leave of Court. The only pleading he may file at this time is a show cause response to this memorandum and order; and

8.    The Court deems plaintiff's return of service (Docket No. 17) to be defective because service of process cannot be made by certified mail. If and/or when summonses are authorized to issue, service of process must be made in accordance with Rule 4 of the Federal Rules of Civil Procedure.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  April 4, 2011